## No. 2335
## Second Circuit

RAYVILLE ·STATE BANK v. PEOPLES COMPRESS AND WAREHOUSE COMPANY, INC.; A. F. BUELOW AND COMPANY, AND GEORGE DOWNES, Warrantors

(December 1, 1925, Opinion and Decree.)

*(Syllabus by the Editor.)*

1. **Louisiana Digest—Warehouses—Par. 4, 5.**
Act No. 221 of 1908 was intended to stabilize warehouse receipts and give them the value of negotiable instruments.

2. **Louisiana Digest—Fraud—Par. 3.**
Fraud can never be presumed. It must be proven.

3. **Louisiana Digest—Evidence—Par. 351, 352.**
The evidence preponderated in favor of plaintiff's contention that it is the bona fide holder as collateral of the tickets or warehouse receipts attached to its petition.

4. **Louisiana Digest—Warehouses—Par. 6, 11.**
The value of the cotton for which the defendant warehouse company is liable to the plaintiff is its value at the time plaintiff, holder of warehouse receipts, demanded delivery of the cotton from the defendant, but was wrongfully refused.

5. **Louisiana Digest—Appeal—Par. 564.**
Issues between warrantors not passed upon by the trial court cannot be considered in the appellate court.

Appeal from Fifth Judicial District Court of Louisiana, Parish of Richland, Hon. John R. McIntosh, Judge.

This is a suit for the value of eight bales of cotton which defendant failed to deliver to plaintiff, the holder of defendant's warehouse receipts. Defendant pleads that he delivered the cotton to Buelow and Company and George Downes which it called in warranty. There was judgment for plaintiff for the value of two bales of cotton. Plaintiff appealed, and defendant filed a motion to amend judgment rejecting plaintiff's demand in full.

Judgment modified by being increased and affirmed.

Tobin R. Hodge, of Rayville, attorney for plaintiff, appellant.

Ellis & Ellis, of Rayville, attorneys for warrantors.

George Wesley Smith, of Rayville, attorney for defendant, appellee.

STATEMENT OF THE CASE

REYNOLDS, J: Plaintiff, as holder of defendant's warehouse receipts for eight bales of cotton which defendant failed to deliver on demand sues for the value thereof.

Defendant pleads that it delivered the cotton to Buelow and Company, a partnership which is called in warranty.

It does not claim that Buelow & Company surrendered the receipts on obtaining delivery but says it was warranted in delivering the cotton without such surrender by reason of a course of dealing which had been pursued by the bank, Buelow & Company and one Downes whereunder Downes would buy cotton sometimes for Buelow & Company and sometimes for himself and sell it to Buelow & Company, drawing on the bank when he bought and drawing on Buelow & Company when he sold to them and sometimes attaching to the drafts, bills of lading or warehouse receipts which were given back to Downes and sometimes not attaching them but promising to furnish them afterwards.

Buelow & Company answered admitting that they received the cotton and are liable to defendant for its value in case defendant is liable to plaintiff; but they claim plaintiff is not entitled to recover because on September 22, 1922, Downes shipped to them fifty-eight bales of cotton and drew

on them through plaintiff for $600.00 with the bill of lading from the cotton attached to the draft and that they paid the draft; that shortly thereafter, at the request of Downes, they returned the bill of lading for the fifty-eight bales to the plaintiff that Downes might check up his purchases against it and that it was to have been returned to them by plaintiff after Downes had inspected it while in plaintiff's possession but that instead of returning the bill of lading to them plaintiff illegally delivered it to Downes and that in consequence they have never received from any source more than thirty of the fifty-eight bales of cotton covered by the bill of lading.

And they aver that by reason of the illegal acts of plaintiff it not only owes them the value of the cotton represented by the eight receipts sued on but also of twenty additional bales and they pray for judgment in reconvention against plaintiff and Downes in solido for the sum of $3000.00 with legal interest thereon from September 22, 1921.

No objection was made by any of the parties to the calls in warranty.

Downes' defense need not be stated because the case was not decided as between Buelow & Company and him; the district court holding that the proof was not sufficient to enable it to pass on their respective claims against each other.

Our jurisdiction being only appellate, we cannot decide as between these two either.

No objection seems to have been made to the action of the district court on deciding the rest of the case and reserving this part for further proceedings.

The district court gave the plaintiff judgment for the value of two bales of cotton at 20¼ cents a pound, being the market value at the time it was delivered to Buelow & Company and rejected its claim for the other six bales.

It also gave defendant judgment against Buelow & Company for the same.

Plaintiff appealed and defendant has filed a motion to amend the judgment by rejecting plaintiff's demand in full.

### OPINION

Act 221 of 1908 was intended to stabilize warehouse receipts and give them the value of negotiable instruments.

Plaintiff sues on eight public warehouse receipts and is entitled to recover unless the defendant can establish some special defense; and the defense tendered, by Buelow & Company, is that this suit is the result of a combination between plaintiff and Downes to enable Downes to defraud Buelow & Company. It follows, therefore, that the question on which this case turns is whether or not the plaintiff is the bona fide holder of the eight warehouse receipts sued on.

The evidence bearing on this point is:

Tobin R. Hodge testified, page 3:

"Q. Mr. Hodge, when was—when were these tickets received by the Rayville State Bank as collateral for an indebtedness of George Downes?

"A. The Bank received a bill of lading for seven of these bales of cotton and paid for same and received the tickets some days after the cotton came to Rayville and after the bank surrendered to the Compress or the railroad company the bill of lading."

Page 4:

\* \* \*

"Q. Then no one except the Compress and the Rayville State Bank have ever had possession of these tickets?

"A. No one I know of.

"Q. You are positive of that?

"A. Yes. Those tickets have never been out of the Bank. Oh, they may have been out of the Bank for an hour or two. I don't think they ever went out of the Bank for an hour even unless—I believe some of those tickets were at one time attached to a draft drawn on Buelow & Company, which draft was refused by him and they were returned to the Bank attached to that draft that he failed to pay.

* * *

Page 5:

"Q. They were owned by the Rayville State Bank?

"A. They were not owned by the Rayville State Bank; they were pledged to the Rayville State Bank to secure advances for the purchase of cotton.

"Q. And the Rayville State Bank allowed George Downes to attach them to his draft?

"A. The Rayville State Bank itself attached them to the draft.

"Q. The draft of George Downes?

"A. Yes. George Downes' draft payable to the Bank and drawn on Buelow and when the draft was returned and not paid the cotton tickets were returned with the draft to the Bank where they belonged."

* * *

Page 6:

"Q . But when the Bank advanced money to Mr. Downes to pay for the cotton it required either compress tickets or shippers order bills of lading didn't it?

"A. Yes, and got them and among those were these eight bales that is attached to this petition."

George Downes testified, page 59:

"Q. The eight compress tickets that were handed—that were attached to plaintiff's petition were pledged by you to the Rayville State Bank were they not?

"A. They were.

"Q. The note attached to petition of plaintiff and signed by you for one thousand and five dollars and seventy cents is due by you to said Bank, is it not?

"A. It is.

"Q. And said note is secured by the eight compress tickets attached to the petition?

"A. It is.

"Q. The Rayville State Bank paid for the cotton represented by those tickets along with other cotton for you did it not?

"A. It did."

Contra, C. P Searles testified, page 65:

"Q. Please examine the eight compress tickets attached to plaintiff's petition and state whether or not E. A. Buelow & Company ever paid for any of the identical cotton represented by these tickets?

"A. Yes, we have paid for some of this cotton.

"Q. Just state which part of it and give the compress ticket numbers?

"A. Three two, five three three, forty thousand eight eighty, forty thousand, eight eighty-two, forty thousand eight eighty-three, forty thousand, eight eighty-five, forty thousand nine naught seven.

"Q. Making how many bales in all?

"A. Six bales of the eight."

* * *

"Q. Were these payments made by Buelow on draft or how were they made?

"A. They were made by draft with tickets attached.

"Q. Have you the drafts in your possession?

"A. Yes.

"Q. Please let us see them.

(Witness hand the attorney the drafts.)

"Q. Were these payments made on one or more drafts?

"A. They were made on two drafts."

* * *

"Q. Now were the six identical compress tickets attached to plaintiff's petition that you have given the numbers of were they attached to those two drafts when the drafts were paid by you?

"A. Yes.

"Q. What did you do with the compress tickets?

"A. Tickets were mailed back for shipment.

"Q. To whom?

"A. To Mr. Downes for delivery to the press."

* * *

Page 72:

"Q. And you took the tickets and checked them by the invoices and found that it was correct?

"A. Yes.

"Q. And you returned the tickets to Mr. Downes and asked him to have the cotton shipped out? That is your testimony, is it?

* * *

Page 76:

"Q. How and when did you send them to Mr. Downes, you said you sent them?

"A. I sent them—

"Q. Well when?

"A. I cannot state just when they were sent; the letter stated there was twenty-two bales that accompanied the shipping order.

"Q. Well, haven't you got any letter transmitting the eight bales to him?

"A. No, sir, not that particular eight bales. The eight bales were included in this forty-five bale shipment.

Page 97:

"Q. Well, just give that date as near as you can approximately how long has it been since you discovered this in checking your document over?

"A. We discovered this where we paid for this particular six bales; I should say in the last few weeks.

"Q. Now, Mr. Searles who in the office of Buelow & Company if anyone check compress tickets attached to drafts with invoices sent in by Mr. Downes?

"A. I check all the documents.

* * *

"Q. You did that yourself?

"A. Yes, sir.

"Q. And you know that those tickets were attached to the drafts when you paid them?

"A. Yes.

* * *

Page 100:

"Q. And you didn't know then that the tickets covering the eight bales in question here were missing until the last two or three weeks?

"A. No, I didn't know the cotton really had been paid for until a few weeks ago."

Though claiming, as shown above that plaintiff owed them twenty-two bales of cotton because of its failure to return to them a bill of lading entrusted to it and its delivery of said bill of lading instead to Downes, which bill of lading, they allege, covered six of the eight bales sued for, and though introducing some evidence in support of this claim Buelow & Company have abandoned the claim by not appealing or asking an amendment in this court and do not argue it.

Instead, they claim that the compress receipts for six bales sued on were returned not to the Bank but to Downes. If this be true, by sending the tickets to Downes they placed it in his power to renegotiate them; so that even if, as they claim, they had

previously paid the Bank, the Bank would clearly have the right to recover on them.

From all the testimony we are of the opinion that the evidence preponderates in favor of plaintiff's contention that it is the bona fide holder as collateral of the tickets attached to its petition. If the evidence were equally balanced, Buelow & Company would have failed to make out their defense; for fraud cannot be presumed.

Our learned Brother of the district court held that plaintiff was not entitled to recover as to six of the eight bales for the reason that Buelow & Company had actually paid for them and Downes had received credit at the Rayville State Bank for the proceeds of the same.

We cannot concur in this view for the reason that the Bank furnished Downes with the money with which to pay for the cotton and carried his account in the form of an open account or note and received from Downes from time to time warehouse receipts as collateral security the eight cotton tickets in question here being part of the cotton tickets so pledged to the Bank by Downes as collateral security; and the Bank having received them in good faith, it cannot be deprived of them unless fraud or laches is established against it and there has been no evidence introduced warranting us in holding that it has been.

In establishing the value of the cotton for which defendant is liable to plaintiff we think plaintiff is entitled to recover its value as of the time it demanded delivery of the cotton, for it was the duty of the Compress Company to hold the cotton until the receipts were presented and when the cotton was delivered to cancel the tickets so as to prevent them from being used again.

The price of cotton at the date delivery was demanded by plaintiff is shown by the evidence to have been 32 cents per pound and 32 cents per pound for 4120 pounds the weight of the eight bales called for by the tickets, amounts to $1318.40. But these tickets were attached to a note in favor of plaintiff for $1005.70, dated February 2, 1923, and ten per cent attorney's fees as provided for in said note, and bearing 8 per cent per annum interest from its date until paid, and plaintiff is only entitled to judgment for the amount owing on the note.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended and that plaintiff Rayville State Bank, do have and recover judgment against the Peoples Compress & Warehouse Company for the sum of $1005.70 with interest thereon from February 2, 1923, at the rate of eight per cent per annum until paid and ten per cent attorney's fees and that the Compress receipts sued on be delivered to the Peoples Compress & Warehouse Company, Inc., and that defendant pay all costs.

It is further ordered, adjudged and decreed that defendant Peoples Compress & Warehouse Company, Inc., do have and recover judgment against E. A. Buelow & Company, for the sum of $1005.70 with eight per cent per annum interest thereon from February 2, 1923 and all costs of this suit.

It is further ordered, adjudged and decreed that the judgment of the lower court, insofar as it refused to pass upon the issues between E. A. Buelow & Company and George Downes remain as decreed by the district court.

And as thus modified, the judgment appealed from is affirmed.